# United States Court of Appeals
## For the First Circuit

No. 24-2042

DEMAN KIM,

Petitioner,

v.

TODD BLANCHE,* Acting Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Aframe, Lipez, and Dunlap,
Circuit Judges.

Randy Olen for petitioner.

Sunah Lee, Senior Trial Attorney, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, with whom Brett A. Shumate, Assistant Attorney General, Civil Division, and Cindy S. Ferrier, Assistant Director, were on brief, for respondent.

July 30, 2026

---

* Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Acting Attorney General Todd Blanche is automatically substituted for former Attorney General Pamela J. Bondi as Respondent.

**AFRAME**, **Circuit Judge**.  Deman Kim petitions from the Board of Immigration Appeals' (the "BIA") denial of his second motion to reopen his removal proceedings.  We grant the petition because the BIA misunderstood the authority under which Kim sought reopening and overlooked certain critical evidence.

## I.

In 1982, when Kim was four years old, he arrived in the United States from Cambodia.  Two years later, he received lawful permanent resident status.  In 1996, a Rhode Island Superior Court convicted Kim of a controlled-substance distribution offense based on Kim's plea of nolo contendere.  That conviction soon led to an order to show cause charging Kim with deportability under then-existing provisions of immigration law.  Deportation proceedings began in October 1996.

In 1998, an immigration judge ("IJ") concluded that Kim was deportable based on his drug conviction and denied his other requests for relief.  Kim appealed to the BIA, which, in January 1999, dismissed the appeal because Kim had presented no reason to disturb the IJ's ruling that he was deportable.  It does not appear that Kim petitioned this Court for review of the BIA's ruling.

That is how matters stood for over twenty years, during which time Kim remained in the United States.  Then, in 2020, a Rhode Island prosecutor dismissed Kim's criminal conviction under Rhode Island Rule of Criminal Procedure 48(a) based on the

"interests of justice." The dismissal stated that Kim, who committed the offense "when he was [eighteen] years old," had "completed his sentence without incident"; has "no subsequent or previous felony contacts"; "is employed and a taxpayer"; and "has three children whom he financially supports."

In May 2021, Kim filed his first motion to reopen his removal proceedings with the BIA. Kim relied on the dismissal of his criminal charge, arguing that because he no longer had a criminal history, there was no extant reason to remove him.

In February 2023, the BIA denied this first motion to reopen on two grounds. First, it ruled that the motion was untimely because Kim neither (1) showed a statutory or regulatory exception to the time limitation governing his motion nor (2) demonstrated that he was entitled to equitable tolling. Second, the BIA concluded that, even if the motion were timely, it would fail on the merits because the record did not show that Kim's conviction had been dismissed based on "substantive or procedural defects" in his criminal proceedings. It does not appear that Kim sought this Court's review of that order either.

Instead, Kim returned to the Rhode Island Superior Court. On September 13, 2023, the Superior Court issued the following consent order, vacating Kim's sentence under Rhode Island Rule of Criminal Procedure 11:

- 3 -

> This matter was heard and discussed in chambers, and after due deliberation, and in consideration of the parties' agreement, it is hereby **ORDERED[,] JUDGED [,] AND DECREED** that Petitioner's plea and sentence in the matters of State of Rhode Island v. Deman[] Kim, P2-1996-0336A and State of Rhode Island v. Deman[] Kim, P2-1996-0816A is hereby vacated pursuant to the Amended Application in the above-captioned Petition for Post-Conviction Relief, specifically the grounds set forth therein under Super. Ct. R. Crim. P. 11, which under Rhode Island law implies due process.

Armed with this order, in April 2024, Kim filed with the BIA a second motion to reopen his removal hearing. The BIA again declined to reopen Kim's hearing. It ruled that the motion was "time and number barred" and that Kim was not entitled to equitable tolling because he failed to demonstrate due diligence between when the Superior Court issued its order and when he filed his second motion to reopen.

In addition, the BIA again ruled that Kim had not met his burden to show that his conviction was vacated based on "a procedural or substantive defect in the underlying proceedings" rather than for reasons "'unrelated to the merits' such as 'rehabilitation or immigration hardships.'" (quoting Matter of Thomas & Thompson, 27 I. & N. Dec. 674, 675 (A.G. 2019)). The BIA premised this conclusion on its view that the Superior Court had neither adequately described the Rule 11 violation nor "definitively state[d] that there was a due process violation." It instead viewed the Superior Court's vacatur order as being

- 4 -

issued on the same equitable grounds that prompted the prosecutor to dismiss Kim's conviction based on "family ties and [Kim's] age at the time he committed the offense."

Kim timely petitioned this Court for review of his second motion to reopen.

## II.

There are two types of motions that a noncitizen may file to reopen their removal case before the BIA. Hodzic v. Bondi, 171 F.4th 44, 50 (1st Cir. 2026). The first is a motion to reopen authorized by statute. See 8 U.S.C. § 1229a(c)(7). The statute generally limits a noncitizen to filing one such motion within ninety days of the entry of the final administrative order of removal. Id. § 1229a(c)(7)(A), (C)(i). Under certain circumstances, we have assumed (though never actually decided) that this ninety-day deadline is subject to equitable tolling. See, e.g., Garcia v. Bondi, 135 F.4th 1, 5 & n.2 (1st Cir. 2025) (assuming equitable tolling applies where both parties make the same assumption); Quiroa-Motta v. Garland, 993 F.3d 25, 27 & n.1 (1st Cir. 2021) (assuming equitable tolling applies and then determining that the noncitizen has not demonstrated entitlement to such relief). Such circumstances require a showing "'(1) that [the noncitizen] has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' of filing by the deadline." Quiroa-Motta, 993 F.3d at 27 (quoting

Neves v. Holder, 613 F.3d 30, 36 (1st Cir. 2010) (per curiam)). Equitable tolling is "rare[ly]" granted and requires the noncitizen to show that he "diligently pursued his rights for the entire period he seeks tolled." Id. (quoting Neves, 613 F.3d at 36).

The second type of motion to reopen is a motion to reopen sua sponte.[1]  Such a motion is authorized by regulation, 8 C.F.R. § 1003.2(a), and is available for the noncitizen to file "[i]f a statutory motion to reopen is untimely or number-barred." Hodzic, 171 F.4th at 50.  Under the regulation, the BIA may "at any time" reopen a case.  8 C.F.R. § 1003.2(a).  Doing so, however, is "an extraordinary remedy reserved for truly exceptional situations." Hodzic, 171 F.4th at 50 (quoting Phimmady v. Bondi, 128 F.4th 18, 22 (1st Cir. 2025)).  And even where the BIA finds an exceptional situation, it is not required to grant sua sponte reopening. Id. at 51.

While federal courts of appeals may review orders denying statutory reopening, they generally may not review orders denying sua sponte reopening. Hodzic, 171 F.4th at 51.  There is, however, an exception:  Federal appellate courts may review the

---

[1]  "Sua sponte" typically describes a situation where an adjudicative body acts on its own initiative.  But "[t]his nomenclature is somewhat misleading [in this context] because usually the noncitizen must request that the BIA reopen proceedings."  Phimmady v. Bondi, 128 F.4th 18, 22 n.1 (1st Cir. 2025).

- 6 -

BIA's denial of a motion to reopen sua sponte where there is a "colorable" claim that the denial was based on legal or constitutional error.  Id. (quoting Gyamfi v. Whitaker, 913 F.3d 168, 177 (1st Cir. 2019)); see 8 U.S.C. § 1252(a)(2)(D).  "When the BIA's denial of a motion to reopen rests on a legal error, it is appropriate to 'remand to the BIA so it may exercise its authority against the correct legal background.'"  Thompson v. Barr, 959 F.3d 476, 483 (1st Cir. 2020) (quoting Bonilla v. Lynch, 840 F.3d 575, 588 (9th Cir. 2016)).

It is beyond dispute that Kim sought to invoke the BIA's sua sponte authority when he filed his second motion to reopen in April 2024.  Kim specifically requested that this motion be "considered as a Motion to Sua Sponte Reopen."  That, of course, was the correct approach given that Kim had already filed a statutory motion to reopen in 2021, and that he filed it long after the ninety-day deadline had passed.  See Hodzic, 171 F.4th at 50 ("If a statutory motion to reopen is untimely . . ., a petitioner may request that the BIA reopen the proceedings sua sponte.").  Accordingly, we consider Kim's petition only insofar as it raises a colorable claim of legal or constitutional error.  See id. at 51.

Kim identifies two such errors.  First, he contends that the BIA failed to appreciate that he filed his motion to reopen under its sua sponte authority rather than under the statute.

Second, he argues that on the merits of his claim, the BIA erred by overlooking evidence relevant to its conclusion that there was no proof of a defect in Kim's underlying criminal proceeding. See Trejo v. Bondi, 152 F.4th 248, 255 (1st Cir. 2025) ("A failure to consider key evidence is an error of law . . . ."). We agree on both points.

On the first issue, it is evident from the BIA's order that it misunderstood Kim to be seeking statutory reopening. The second paragraph of the BIA's order cites the statutory provision, 8 U.S.C. § 1229a(c)(7)(C)(i), allowing motions to reopen, and it describes the ninety-day limitation imposed by the statute. The order then rejects Kim's motion by stating that it "is both time and number barred," concepts that apply to statutory reopening.

Moreover, the BIA's order invokes equitable tolling, which further suggests that the BIA thought that Kim's motion was a request to reopen under the statute. Equitable tolling allows relief from an otherwise applicable time bar. Irwin v. Dep't of Veterans Affs., 498 U.S. 89, 95-96 (1990). But sua sponte motions to reopen are not subject to any such bar, as the BIA may reopen "at any time." Thompson, 959 F.3d at 480 (quoting 8 C.F.R. § 1003.2(a)). Thus, equitable tolling has no role in the adjudication of sua sponte motions to reopen. See Bolieiro v. Holder, 731 F.3d 32, 39 (1st Cir. 2013) ("[B]y contending that equitable tolling should excuse the untimeliness of her motion,

- 8 -

[the noncitizen's] argument is directed at her statutory right to file a motion to reopen, not the agency's sua sponte authority to reopen proceedings.").[2]

One may ask whether this error makes any difference. After all, the BIA may deny a sua sponte motion to reopen on the ground that a noncitizen failed to show due diligence in pursuing their claim. Phimmady, 128 F.4th at 24-25. And here, the BIA grounded its decision to deny equitable tolling on Kim's lack of due diligence. But the BIA's characterization of Kim's error does, in fact, matter. Equitable tolling requires the party seeking relief to prove (1) due diligence and (2) the existence of an extraordinary circumstance preventing a timely filing. Holland v. Florida, 560 U.S. 631, 649 (2010). These are necessary elements; the moving party's failure to prove one of them defeats the claim for equitable tolling and requires the application of an otherwise applicable time bar. See Menominee Indian Tribe of Wis. v. United

---

[2]    As a general matter, the BIA need not explain why it declines, in any given case, to grant sua sponte reopening. See, e.g., Rumierz v. Gonzales, 456 F.3d 31, 38 n.7 (1st Cir. 2006) ("There is no requirement that the BIA . . . explain its reasoning on a motion to reopen or reconsider."). Accordingly, the BIA's failure to use the phrase "sua sponte" does not, by itself, indicate that the BIA's decision here was erroneous. Reading the order as a whole, however, the BIA's exclusive focus on legal standards related to statutory reopening persuades us that the BIA committed legal error by misconstruing the basis for Kim's motion. See Thompson v. Barr, 959 F.3d 476, 483, 490 (1st Cir. 2020) (reviewing a denial of motion to reopen sua sponte for "colorable legal . . . challenges").

States, 577 U.S. 250, 255-57 (2016); Kwoka v. Enter. Rent-A-Car Co. of Bos., 141 F.4th 10, 17 (1st Cir. 2025). Here, were Kim to have filed a statutory motion to reopen, the BIA's finding that the motion was untimely and that Kim lacked due diligence for his filing delay would mean that his claim would fail as a matter of law.

But denial of Kim's motion on timing grounds is not preordained if the BIA had properly understood Kim to have invoked its sua sponte authority for reopening. The operative regulation allows the BIA to grant a sua sponte motion to reopen "at any time." 8 C.F.R. § 1003.2(a). And the BIA has "unfettered discretion" to grant such motions. Matais v. Sessions, 871 F.3d 65, 68 (1st Cir. 2017) (quoting Luis v. INS, 196 F.3d 36, 40 (1st Cir. 1999), superseded in part by statute, REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 302, as recognized in Thompson, 959 F.3d at 481). Based on this broad authority, the BIA could grant Kim's sua sponte motion to reopen even though it thought that he had not acted with due diligence. Thus, the BIA's misunderstanding about the legal basis for Kim's motion to reopen prevented the BIA from appreciating the full scope of its discretion to reopen Kim's case.

That brings us to Kim's second claim of error. Recall that the BIA also denied Kim's motion to reopen on the merits. Specifically, it concluded that Kim had not "met his burden to

establish that his 1996 conviction was vacated based on a substantive or procedural defect rather than reasons unrelated to the merits of the underlying criminal proceedings."

In reaching this conclusion, the BIA erred by disregarding the Superior Court's order vacating Kim's 1996 conviction on the basis that the Superior Court did not adequately explain itself. That order states that the court vacated Kim's conviction, including his plea and sentence, "under Super. Ct. R. Crim. P. 11." Rhode Island Superior Court Rule of Criminal Procedure 11 prevents a court from accepting a guilty plea or a plea of nolo contendere "without first addressing the defendant personally and determining that the plea is made voluntarily with [an] understanding of the nature of the charge and the consequences of the plea." A plea "must be set aside" when it does not "conform[]" to Rule 11's requirements, even if that plea has been accepted. State v. Frazar, 822 A.2d 931, 935 (R.I. 2003) (quoting Reporter's Notes to R.I. Super. Ct. R. Crim. P. 11).

The Superior Court order, which was in the record before the BIA, provides little explanation for its ruling. Nevertheless, it does hold that the Superior Court vacated Kim's 1996 conviction because of the particular Rule 11 violation that Kim set out in his Petition for Post Conviction Relief, namely, that "the plea colloquy did not comply with Rule 11." Thus, the order states on its face that the vacatur was prompted by a

- 11 -

violation of a procedural rule, i.e., a procedural defect, related to Kim's plea colloquy.  The BIA therefore legally erred when it concluded that Kim failed to show that the vacatur of his conviction was based on a defect in his criminal proceeding.[3]

## III.

The petition for review is **granted**.  The case is **remanded** to the BIA for further proceedings.

**So ordered**.

---

[3]     Two loose ends warrant comment.  First, although the BIA's order criticizes the Superior Court for not providing more detail about the nature of the Rule 11 violation, the government could not identify, when asked at oral argument, any way in which a Rule 11 violation would occur that would not constitute a substantive or procedural error in Kim's underlying criminal case.  Moreover, the Superior Court order, citing Frazar, 822 A.2d at 935, explains that a violation of Rule 11 implies a violation of due process under the United States Constitution.  That explanation was sufficient to demonstrate a procedural defect to the BIA, which considers three factors in making that evaluation, namely: "(1) the law under which the court issued its order," here, Rhode Island law and Rule 11 in particular, "(2) the language of the court's order itself, and (3) the reasons provided by the noncitizen in the request for post-conviction relief," including Kim's assertion that "the plea colloquy did not comply with Rule 11."  Ballinas-Lucero v. Garland, 44 F.4th 1169, 1179 (9th Cir. 2022).  It is not the BIA's task to inquire into possible other, unstated rationales for the state court's order.

Second, the BIA's order relies on the prosecutor's initial dismissal of Kim's conviction based on equitable factors as a ground for denying Kim's second motion to reopen.  This is a non-sequitur, as Kim's second motion was premised on the Superior Court's order vacating Kim's conviction for violating Rule 11.  The prosecutor and the state court possess and exercise different authorities.  That the prosecutor employed its authority to dismiss Kim's case for equitable reasons under Rule 48(a) does not undermine or preclude the Superior Court's later determination that Kim's conviction suffered from a procedural defect in the plea colloquy requiring vacatur under Rule 11.

- 12 -